## MARIE SCHMIDT

*v.*

## SCHMIDT REALTY AND CONSTRUCTION COMPANY et al.

[Decided June 30th, 1920.]

1. On a suit to foreclose a mortgage, *held* that the adjustment of litigation between the parties, and the surrender of certain stock, constitute a legal and valid consideration for the mortgage sought to be foreclosed.

2. *Held,* further, that the giving of another mortgage to the trustee of the complainant was only to provide additional security for the complainant, and did not pay or extinguish the mortgage sought to be foreclosed in this suit, and that the complainant is entitled to a decree for the amount proved due on her mortgage in this suit.

On pleading and proofs.

*Messrs. McDermott & Enright,* for the complainant.

*Mr. Philip Zalkind,* associated with *Mr. Isaac F. Goldenhorn,* for the Schmidt Realty and Construction Company, defendant.

*Messrs. Lum, Tamblyn & Colyer,* for William Solomon, and also for Albert A. Raphael, trustee in bankruptcy of Schmidt Realty and Construction Company, defendants.

LEWIS, V. C.

This is a bill to foreclose a mortgage of $20,000, made by the defendant, Schmidt Realty and Construction Company, to the complainant, Marie Schmidt, dated June 8th, 1908, and payable June 19th, 1914, with interest at five per cent. Interest was in arrears for a long period. Foreclosure was resisted upon the grounds that the mortgage was without legal consideration, and that, aside from this contention, it had been satisfied and discharged.

Prior to the execution of the mortgage under foreclosure, complainant claims she placed the sum of $27,000 in the hands of the Schmidt Realty and Construction Company for the purpose of purchasing certain real estate, title to which was to be taken in complainant's name, but which was actually taken in the name of the Schmidt Realty and Construction Company. The present complainant thereupon brought suit to set aside the title in the company's name and to have it decreed to be in her personally, claiming that under these circumstances a trust resulted in her favor, and that the company should be held to hold the land thus purchased with her funds, as trustee for her benefit.

Subsequently that case was settled between the parties; a *lis pendens* that had been filed was canceled; releases were executed; all the stock in the Schmidt Realty and Construction Company held by the complainant was surrendered by her to the company; and at that time the mortgage now under foreclosure was executed by the company in favor of the present complainant, securing a bond in the sum of $20,000.

The complainant contends that the adjustment of the preceding litigation, and other litigation affecting the company, then pending in other courts, and the surrender of the stock, con-

stituted the consideration for this mortgage, and that it is a legal and valid consideration. The execution and delivery of the bond and mortgage involved are not questioned. Neither do the defendants question the calculation of the amount due thereon, as submitted by the complainant, so far as the accuracy of the calculation is concerned; but interpose their legal objections to the validity of the mortgage itself.

According to the calculation submitted, there was due on the mortgage the principal of $20,000, upon which, however, defendants were entitled to credits amounting to $9,870, leaving a balance due on principal of $10,130, with accumulated interest thereon of $4,933.33, making a total of $15,016.33, for which sum final decree was rendered in favor of complainant.

The mortgage under foreclosure originally covered a tract of about one thousand lots, situated at Maywood, Bergen county, New Jersey, and was, at the date of its execution, subject to a first mortgage on said lands of $30,000, held by one Anderson.

About one hundred and forty-four lots were subsequently released from the Anderson mortgage, and as to those lots complainant's mortgage became a first lien.

Anderson's mortgage was foreclosed by George P. Rust, to whom it had been assigned. Complainant's mortgage was then held by Archibald C. Hart, as trustee for the present complainant; and the Schmidt Realty and Construction Company and Hart were made defendants in the Rust foreclosure suit. A final decree was entered in that suit in favor of: first, George P. Rust for $35,226.92; second, E. Max Applegate for $799.41; third, Archibald C. Hart for $18,250.84, all with interest and costs against the Schmidt Realty and Construction Company, to be raised and paid out of the lands covered by the Rust mortgage.

The property was purchased at the sheriff's sale by William Wemple and A. C. Hart, for the sum of $37,678.67, which was slightly less than the amount due on the Rust mortgage, and which left the Applegate mortgage, and complainant's mortgage, wholly unpaid.

To finance this purchase Wemple and Hart organized a cor-

poration known as the Maywood Company; the incorporators being Wemple, Hart, Robert D. Kent and W. Howard Mears, and Edward F. Sackett. This new company executed two first mortgages to the Guarantee Mortgage and Title Insurance Company, one for $23,000 and one for $12,000, a total of $35,000. Hart and Wemple personally guaranteed payment by joining in the bond. To make up the difference they borrowed $8,646.19 from the Merchants' Bank of Passaic on their personal note, secured by mortgage.

To protect Marie Schmidt, the present complainant, whose then solicitor was A. C. Hart, one of the purchasers at the sheriff's sale, the Maywood Company executed a mortgage to A. C. Hart as trustee for Marie Schmidt for $19,113.34, which represented the amount then due on the original mortgage which is now under foreclosure.

The mortgage last referred to contained the following recital:

"This mortgage is intended to be a lien upon the premises in question second only to the lien of two mortgages aggregating $35,000, one upon a part of the premises in question, and the other upon the balance thereof. It is covenanted and agreed between the parties in this mortgage, and the bond accompanying it, that, whereas the mortgagee, as trustee, but appearing individually in mortgage hereinafter mentioned, at the present time possesses a mortgage upon realty given as security for the payment of the principal before described in this mortgage and the bond accompanying it upon other realty than that described herein, should the party of the second part receive any payment from such other realty or from any other source upon said bond and mortgage it is to be credited upon the principal of this mortgage and the bond accompanying."

It seems clear from this recital and the evidence in the case, that it was not the intention of the parties that the last mortgage was given in payment of the mortgage now under foreclosure; but that it was simply intended for the further protection of the complainant.

The evidence further establishes that the Maywood Company mortgage was subsequently satisfied by the payment of $6,000, and that complainant has received from releases and sale of certain of the lots covered by the Maywood Company mortgage the sum of $1,140; and from releases on the sale of lots covered by the mortgage under foreclosure the sum of $2,730, making

a total, as heretofore indicated, of $9,870, for which credit has been given upon the amount claimed to be due on the original mortgage, which is the one now under foreclosure.

I am satisfied from the proofs presented that the defences interposed cannot be sustained, and that, in this suit, which is simply for the foreclosure of the mortgage in question, complainant is entitled to her decree for the amount shown to be due in the calculation referred to.

A decree will be advised in accordance with these views.